**Hakeem O. ALLI–BALOGUN, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Docket No. 00–6321.**

United States Court of Appeals, Second Circuit.

Argued Aug. 8, 2001.

Decided Feb. 22, 2002.

Michael J. Goldberger, Assistant United States Attorney, Brooklyn, New York (Varuni Nelson, Arthur P. Hui, Assistant United States Attorneys, on the brief), for Defendant–Appellee.

Jeffrey G. Pittell, New York, New York, for Plaintiff–Appellant.

Before: MINER, JACOBS, CALABRESI, Circuit Judges.

JACOBS, Circuit Judge.

Plaintiff-appellant Hakeem O. Alli–Balogun appeals from the judgment of the United States District Court for the Eastern District of New York (Weinstein, J.), dismissing his complaint demanding return of a Range Rover seized by the United States.

The vehicle was seized when Alli–Balogun was arrested in 1992. Although the government served notice of forfeiture within the five-year statute of limitations afforded to the government for commencing forfeiture proceedings, *see* 19 U.S.C. § 1621, the notice was misdirected. The district court ruled that because Alli–Balogun had acknowledged through counsel at sentencing that he learned of the forfeiture within the limitations period and signaled that he would not seek to reclaim his seized property, the statute of limitations was tolled.

We affirm on other grounds.

**I**

Alli–Balogun was arrested on drug charges on October 8, 1992, and convicted of conspiracy to import heroin and importing heroin in April 1994. On March 16, 1995, Alli–Balogun was sentenced to 360 months imprisonment. Property seized from Alli–Balogun at the time of his arrest included jewelry, money, a BMW, and a 1991 Range Rover.

The civil forfeiture of funds or property that are the proceeds of drug transactions is authorized by 21 U.S.C. § 881:

(a) Subject Property

The following shall be subject to forfeiture to the United States and *no property right shall exist in them:*

    \*     \*     \*     \*     \*     \*

(6) All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance ..., all *proceeds traceable to such an exchange,* and all moneys ... used or intended to be used to facilitate any violation of this subchapter....

(b) Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attor-

ney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property....

21 U.S.C. § 881 (emphases added). For property worth no more than $500,000, the Drug Enforcement Agency ("DEA") follows the administrative forfeiture procedure set out in the customs laws. 19 U.S.C. § 1607(a)(1)(1999); 21 U.S.C. 881(d); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1156 (2d Cir.1994). *See United States v. Idowu*, 74 F.3d 387, 394 (2d Cir.), *cert. denied*, 517 U.S. 1239, 116 S.Ct. 1888, 135 L.Ed.2d 182 (1996). The DEA accordingly commences administrative forfeiture by publication and notice to each person having an interest in the property. 19 U.S.C. § 1607(a). A claimant in receipt of such notice can challenge forfeiture in a "judicial" proceeding by filing a timely claim with the DEA. 19 U.S.C. § 1608; 28 C.F.R. §§ 9.1–9.5 (2002); 21 C.F.R. §§ 1316.75–76 (2002). Generally, if no claim is filed, an administrative forfeiture occurs by default. 19 U.S.C. § 1609(a); 21 C.F.R. § 1316.77 (2002). The filing of a timely claim stops the administrative forfeiture process and the United States Attorney is required to institute judicial forfeiture proceedings. 19 U.S.C. §§ 1603(b), 1608; 21 C.F.R. §§ 1316.76(b), 1316.78 (2002). Subject to exceptions such as tolling, such forfeiture proceedings must be commenced by the government within five years. 19 U.S.C. § 1621 (set forth in the margin [1]).

## II

On November 9, 1992, the DEA commenced an administrative proceeding pursuant to 21 U.S.C. § 881, by issuing a "Notice of Seizure" ("Notice") to forfeit the Range Rover, which had been valued at $36,500. The DEA sent the Notice (setting forth how to contest forfeiture) to (i) Alli–Balogun's home address, (ii) Manhattan's Metropolitan Correctional Center ("MCC"), where Alli–Balogun was believed to be held, and [iii] lien-holder General Motors Acceptance Corporation ("GMAC"). Less than two weeks before the Notice was sent, however, Alli–Balogun was transferred from MCC to the Federal Correctional Institute in Otisville, New York ("FCI Otisville"). Apparently, the Notice that arrived at MCC on November 17, 1992 was not forwarded to FCI Otisville, so Alli–Balogun was without notice of the forfeiture proceedings regarding the Range Rover. On December 24, 1992, having received no claim from Alli–Balogun contesting forfeiture, the DEA declared the Range Rover administratively forfeited pursuant to 19 U.S.C. § 1609. It was sold at an auction for $20,900 in early 1993. GMAC's lien was paid out of the proceeds, and the balance of $2,600.18 was forfeited to the United States.

At Alli–Balogun's sentencing on March 16, 1995, the judge asked Alli–Balogun whether any property had been taken from him and not returned. Alli–Balogun

---

**1.** 19 U.S.C. § 1621 provides:

"No suit or action to recover any duty under section 1592(d), 1593a(d) of this title, or any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, except that—...

(2) the time of the absence from the United States of the person subject to the penalty or forfeiture, or of any concealment or absence of the property, shall not be reckoned within the 5 year period of limitation."

answered, "[t]wo cars and some jewelry." Joint App. at 131 (hereinafter "JA"). Counsel for Alli–Balogun, Mr. Weiss, commented that some cars and jewelry had been "forfeited," and that prior counsel had drafted but not filed papers presumably seeking their return; he added: "I don't believe there is anything I can do about it at this point." *Id.* The court responded: "There is no return of property that I can order, no restitution, no fine." *Id.*

### A

On or about April 24, 1996, Alli–Balogun *pro se* filed a motion in his criminal case seeking return of the Range Rover, and stated that he had not "heard anything" about the property post-seizure until "it was mentioned at the sentencing hearing." *Id.* at 11. The district court ordered the government to respond, but the government did not do so and the motion was never decided.

On April 13, 1998, Alli–Balogun *pro se* filed a complaint seeking return of the Range Rover. Alli–Balogun alleged that the administrative forfeiture violated due process because he lacked adequate notice of the proceedings.[2] Counsel was appointed for Alli–Balogun on October 26, 1999.

On June 20, 2000, Alli–Balogun moved for summary judgment, on the grounds that [i] the forfeiture was "null and void" for want of notice, and [ii] because the government's five-year limitations period for commencing forfeiture had run, the government could no longer initiate a proceeding. Alli–Balogun demanded return of the Range Rover as a matter of law. The government conceded that Alli–Balogun was not given proper notice of the

forfeiture proceedings, but contended that the lack of notice could be cured by allowing Alli–Balogun to judicially challenge the administrative forfeiture. The district court found that although Alli–Balogun did not receive constitutionally adequate notice, the government could have presumed, based on the colloquy at the March 1995 sentencing hearing, that Alli–Balogun knew about the forfeiture and did not intend to contest it. The judge ruled, therefore, that the statute of limitations was equitably tolled, and therefore had not yet expired. After denying Alli–Balogun's motion for summary judgment, the district court held a hearing on the merits as to whether the United States had probable cause to seize the Range Rover.

### B

In a judicial proceeding contesting forfeiture, the DEA has the burden of establishing probable cause for instituting the forfeiture proceeding, i.e., that there is "probable cause to believe that the properties are the fruits of illegal drug activity." *United States v. Daccarett,* 6 F.3d 37, 55–56 (2d Cir.1993) (quoting *United States v. 228 Acres of Land and Dwelling Located on Whites Hill Road,* 916 F.2d 808, 811–12 (2d Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991)); 19 U.S.C. § 1615; 21 U.S.C. § 881(b)(4); *see also Boero v. DEA,* 111 F.3d 301, 304 (2d Cir.1997). If the government shows this, the burden of proof shifts to the claimant to demonstrate an interest in the property. 19 U.S.C. § 1615; *Boero,* 111 F.3d at 304. The claimant may do so by showing that the property is not the proceeds of illegal drug activities or that the claimant is an "innocent owner." 21 U.S.C. § 881(a)(6) (1999) (current version at 18 U.S.C.

---

**2.** Because criminal proceedings were no longer pending against Alli–Balogun at the time he filed the 1998 complaint, it was construed

by the district court as a civil claim seeking return of the seized property.

§ 983(d) (2001)).[3] If the claimant fails to bear that burden, the government is entitled to a judgment of forfeiture.

At the probable cause hearing, Special Agent Patrick Ahearne introduced evidence on behalf of the government that in January 1992, Alli–Balogun paid $32,679.25 for the Range Rover, financed in part by a $15,000 GMAC loan, with the $17,679.25 balance paid by Alli–Balogun with a $9000 Citibank check and $8,679.25 cash. Ahearne opined that Alli–Balogun earned approximately $300,000 to $500,000 from the drug trafficking conspiracy that ran from April 1991 to May 1992.

Alli–Balogun testified that he paid for the car with his life savings, accumulated from his employment from 1983 through 1992. The record shows that Alli–Balogun worked for the City of New York between 1983 to 1990, worked for private architectural firms between 1983 to 1989, and owned and operated an import/export company during 1989, 1990, and 1992.[4] On his tax returns between 1985 and 1989, he reported annual earnings no greater than $26,500, and for the years 1989, 1990, and 1991, he reported $25,593.57, $30,999, and $4,245, respectively. Alli–Balogun claimed at trial that part of his life savings came from earnings as a cab driver.

During this time, Alli–Balogun supported his wife and four minor children; made monthly payments of $1,025 in rent and $500 on a mortgage for a vacant building he owned in the Bronx; and incurred gasoline, insurance, and maintenance expenses on at least one vehicle.

On this record, the district court concluded that the government had demonstrated probable cause that the Range Rover, which had been acquired during the course of the conspiracy, had been purchased with drug proceeds. This finding put the burden on Alli–Balogun to show that the Range Rover had not been purchased from drug proceeds. The court disbelieved Alli–Balogun's claim that he made no money from drugs, concluded that Alli–Balogun did not satisfy his burden, and dismissed the complaint.

### III

On appeal from that judgment, Alli–Balogun argues that the district court erred in (i) applying the equitable tolling doctrine to the five-year limitations period governing commencement of forfeiture actions; (ii) denying his motion for summary judgment and proceeding to a hearing on the merits; and (iii) dismissing his complaint upon concluding that the Range Rover was purchased with narcotics proceeds.

### A

Equitable tolling is permitted "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (footnote omitted). We review the district court's ruling on equitable tolling

---

**3.** Congress has amended the civil forfeiture statutes for proceedings commenced on or after 120 days from the enactment date of April 25, 2000. *See* Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, § 21, 114 Stat. 202, 225 (codified at 18 U.S.C. § 983). The "innocent owner" defense, which appeared in § 881(a)(6) is now codified

at 18 U.S.C. § 983(d), which clarifies the definition of an "innocent owner." The defense as set forth in § 881(a)(6) is applicable to this case.

**4.** It is unclear whether Alli–Balogun had the import/export company during 1991.

for abuse of discretion. *See Dixon v. Shalala,* 54 F.3d 1019, 1031 (2d Cir.1995).

■ There is no question here of tolling by reason of the timely filing of a defective pleading; it is therefore evidence that the tolling was premised on a finding that Alli–Balogun engaged in misconduct or trickery and that the government was misled into reliance. We cannot affirm on this ground because there is no evidence that the statements made by Alli–Balogun or his counsel amounted to trickery or misconduct, and because (in any event) the government does not claim to have been misled.

At Alli–Balogun's sentencing, his then-counsel commented:

> There's a couple of motor vehicles and some jewelry that were forfeited—was administrative forfeiture. His prior counsel Clover Barrett drew up some papers. Unfortunately, they were not filed on time and I've discussed it with my client. I don't believe there is anything I can do about it at this point.

JA at 131. Five years later, Alli–Balogun's new counsel, Mr. Pittell, explained at the summary judgment hearing that this statement was in error and that the timely notice concerned forfeiture of jewelry, money, and a BMW—not the Range Rover. Forfeiture of that property had been contested in writing and some was returned.[5] Mr. Pittell further explained that although the comments at sentencing referenced forfeiture, they were meant to convey only that Alli–Balogun knew the Range Rover and other property had been *seized* at his arrest, and not yet returned.

Having considered this testimony, the district court construed the sentencing comments to mean that "the defendant and his counsel were aware of the government's attempt to obtain forfeiture of the vehicle, and they weren't going to do anything about it." JA at 80. The court found that the government could have construed the statements that way as well, and probably did; the court therefore ruled that the limitations period was equitably tolled from the March 16, 1995 sentencing until Alli–Balogun filed his first motion for return of the Range Rover in April 1996, indicating that he had never received notice of forfeiture. *See Haekal v. Refco, Inc.,* 198 F.3d 37, 43 (2d Cir.1999) ("When equitable tolling is applied, the limitations period is deemed interrupted; when the tolling condition or event has ended, the claimant is allowed the remainder of the limitations period in which to file his action.").

Our review of the record discloses no evidence of misconduct or trickery by Alli–Balogun. Alli–Balogun did not wait to file his motion for return of property until after the limitations period had run: he filed a motion in the criminal case in April 1996, almost a year and a half before the deadline, and he could hardly have anticipated or planned that the government would ignore the court's order to file a response. The government slept, but the sleep was not induced by Alli–Balogun. Even if Alli–Balogun's counsel mis-spoke at sentencing, the government does not claim that it relied on any such mis-statement; therefore, the government was not "induced" by anything, let alone misconduct or trickery.

---

**5.** Evidence in the record indicates that counsel petitioned on behalf of Alli–Balogun's wife for return of jewelry. The government remitted this jewelry, and also returned property seized from Alli–Balogun's residence and place of business, including audio cassettes, currency, and a leather bag. The BMW seized from Alli–Balogun was returned to his attorney on November 30, 1992.

■ Further, even if the government had alleged that it relied on the sentencing comments and believed that Alli–Balogun had timely received notice of forfeiture, the government certainly knew otherwise when Alli–Balogun filed his motion in April 1996, almost a year and a half before the government's statute of limitations expired, alleging lack of notice and seeking return of the Range Rover. "[G]enerally," courts are "much less forgiving" about defaults when the defaulting party (here the government) "failed to exercise due diligence in preserving [its] legal rights." *Irwin*, 498 U.S. at 96, 111 S.Ct. 453.

■ Finally, even if Alli–Balogun knew *at the time of sentencing* that his Range Rover had been forfeited more than two years earlier, the declaration of forfeiture nevertheless violated his due process rights, chiefly because the notice (sent to MCC after Alli–Balogun had been transferred by the government to FCI Otisville) was not "reasonably calculated under all the circumstances" to apprise Alli–Balogun of the forfeiture of the Range Rover. *See Dusenbery v. United States*, 534 U.S. 161, 122 S.Ct. 694, 700, 151 L.Ed.2d 597 (2002).

**B**

What is the claimant's remedy when an administrative forfeiture was effected without notice to the claimant and the government's five-year period for commencing a forfeiture proceeding has expired? For forfeitures commenced on or after 120 days from April 25, 2000, the question has been answered by statute[6];

but a circuit split has evidently opened with respect to forfeitures (such as the one at issue on this appeal) commenced earlier.

The government argues that a forfeiture that is effected after inadequate notice is voidable (rather than void), even after the statute of limitations has run, and that the district court therefore correctly proceeded to a hearing on the merits of judicial forfeiture. According to the government, this conclusion is supported implicitly by *Boero*, 111 F.3d 301. In that case, cash was seized from the claimant at his arrest in October 1990, and the DEA misdirected the notice of forfeiture to a prison from which the claimant had been transferred. The property was declared administratively forfeited in January 1991. In April 1994—before the expiration of the five-year limitations period—the claimant filed a civil complaint against the DEA seeking return of his property. The DEA concededly failed to give notice, but argued that Boero was limited to his administrative claim and could not seek his property (or its value) in the district court. The court agreed. *Id.* at 303–04. Boero appealed, and we reversed, holding that the district court has jurisdiction to correct a deficiency in the forfeiture proceedings attributed to insufficient notice, and should hear the claimant's challenge to forfeitability. *Id.* at 307.

As the government points out, the limitations period had expired by the time the district court concluded that Boero had received inadequate notice. From this, the government argues that, under *Boero*,

---

6. *See* 18 U.S.C. § 983. This statute, which applies to forfeitures commenced on or after 120 days from April 25, 2000, provides that where a court sets aside a declaration of forfeiture due to inadequate notice to a party with an interest in the forfeiture, the declaration is set aside, "[n]otwithstanding the expiration of any applicable statute of limitations ... without prejudice to the right of the Gov- ernment to commence a subsequent forfeiture proceeding as to the interest of the moving party," within a specified period of time after the motion to set aside the forfeiture is granted. 18 U.S.C. § 983(e)(2)(A). Because the parties did not address the possible effect of 18 U.S.C. § 983 on this case, this court sought and received supplemental briefing on this issue.

a hearing on the merits is the appropriate remedy where a declaration of forfeiture is vacated and the limitations period has expired. We disagree. While we noted in *Boero* that the district court had allowed the claimant to pursue an administrative remedy more than five years after the date of the initial seizure, the statute of limitations issue squarely presented by Alli–Balogun was neither raised nor addressed in *Boero*.[7]

The view urged by the government has prevailed in the Sixth Circuit, which has held that "inadequate notices [of forfeiture] should be treated as voidable, not void, and that the proper remedy is simply to restore the right which a timely [Federal Rule of Criminal Procedure] 41(e) notice would have conferred on the claimant: the right to judicially contest the forfeiture and to put the Government to its proofs under a probable cause standard." *United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir.), *cert. denied*, 531 U.S. 925, 121 S.Ct. 301, 148 L.Ed.2d 242 (2000). Since the government is thereby relieved of the need to start a new forfeiture proceeding, the proceedings are not impacted by the statute of limitations. *Id.* We are not persuaded by that analysis, however, because it affords no incentive to give adequate notice of a timely commenced forfeiture proceeding, and because it makes the limitations period into a period that limits nothing.

Alli–Balogun argues that a forfeiture accomplished without adequate notice is void, and since new forfeiture proceedings cannot be commenced, the property must automatically be remitted to the claimant. The Fifth, Ninth and Tenth Circuits have held that a forfeiture conducted without adequate notice is void and that the statute of limitations should run against the government, subject to any affirmative defenses such as laches or tolling. *Kadonsky v. United States*, 216 F.3d 499, 506–07 (5th Cir.2000) ("[T]he remedy for constitutionally insufficient notice in forfeiture proceedings is to void and vacate the original proceeding, and [the statute of] limitations may bar consideration of the government's forfeiture claim on the merits unless the government provides a rationale to equitably toll or otherwise not apply the statute."); *Clymore v. United States*, 217 F.3d 370, 378 (5th Cir.2000) ("*Clymore II*") (following *Kadonsky*); *Clymore v. United States*, 164 F.3d 569, 574 (10th Cir.1999) ("*Clymore I*") ("[A] forfeiture accomplished without adequate notice is void and must be vacated" and "[w]here obvious statute of limitations problems exist ... the statute of limitations [should be] allowed to operate, subject, of course, to any available government arguments against it."); *United States v. Marolf*, 173 F.3d 1213, 1218–20 (9th Cir.1999) (after declaring forfeiture void for inadequate notice, and where five-year limitations period has expired, remanding to the district court to

---

**7.** Also, in *Adames v. United States*, 171 F.3d 728 (2d Cir.1999), Adames filed a motion for return of property (alleging a due process violation for lack of notice) after the government's limitations period had expired. The government argued that Adames' complaint was untimely and alternatively, that "Adames' admissions at his plea allocution established that he was not entitled to a return of the property." *Id.* at 730. The district court dismissed the complaint as untimely. On appeal, this Court declined to resolve the timeliness issue because the Court determined that in any event, Adames' admissions demonstrated that he was not entitled to the property. *Id.* at 732–33. Therefore, rather than automatically remit the property to Adames, we proceeded to address the merits of the forfeiture claim even though the government's limitations period for commencing a forfeiture proceeding had expired. Because the statute of limitations issue was not raised, however, *Adames* is not authority or precedent on the subject.

determine the value of the forfeited property and ordering the government to pay that sum to the claimant).

In the Fifth and Ninth Circuits, when a forfeiture is declared void and the statute of limitations bars the government from commencing a new forfeiture proceeding, the claimant is entitled to return of the property. *See Clymore II*, 217 F.3d at 378–79; *Marolf*, 173 F.3d at 1220. This result becomes unmanageable and unjust, however, when there is more than one claimant. In the case on appeal, for example, the financing company has taken the lion's share of the proceeds. It would be wrong to require Alli–Balogun to accept that distribution of the proceeds, and it would be just as wrong for Alli–Balogun to take all the proceeds notwithstanding his limited equity in the property.

The Tenth Circuit, while agreeing that a forfeiture conducted without adequate notice is void and that the statute of limitations continues to run against the government, has adopted a sound remedy. In *United States v. Clymore*, 245 F.3d 1195, 1200 (10th Cir.2001) (*"Clymore III"*), the Tenth Circuit started with the proposition that a claimant has no property right "in illegal drugs [or] proceeds from selling illegal drugs," and the government, having "take[n] possession of property used to commit drug offenses,[ ] holds an unperfected right to title to" the property, *id.* (citing 21 U.S.C. § 881(a)(1999) and 21 U.S.C. §§ 881(c) & (h); *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 33 L.Ed. 555 (1890)). The Tenth Circuit therefore rejected the idea that the seized property should be returned automatically to the claimant. *Clymore III*, 245 F.3d at 1200. At the same time, the court ruled that the government is barred from commencing a forfeiture proceeding if the statute of limitations has run. Nevertheless, the court concluded, the government can

still quiet title to the property in "a civil equitable proceeding based upon a Rule 41(e) or equitable civil motion brought by one who alleges a lawful right to possession. . . . To hold otherwise would give criminal defendants a conclusively presumptive property right in the fruit of their criminal conduct even if it was properly seized, a result clearly prohibited by § 881. It would also foreclose judicial consideration of whether [the claimant] met his separate burden of proof required in his civil equitable action based upon Rule 41(e)." *Id.* (citing 21 U.S.C. § 853).

The government can still perfect its title to the seized property, but rather than do so by means of a judicial forfeiture proceeding in which the government's case is assisted by presumptions, it is relegated to opposing a Rule 41(e) or civil equitable motion filed by the claimant in which the government "los[es] the benefit of the opportunity to perfect its right to title by using the statutory shortcuts, presumptions, and statutory burdens of proof." *Id.* at 1201. In particular:

> In a forfeiture action, if the government establishes that it had probable cause to seize the subject property, the claimant bears the burden of proving that the requested forfeiture does not fall within the four corners of the statute [and i]f no such rebuttal is made, a showing of probable cause alone will support a judgment of forfeiture. A claimant in a Rule 41(e) or equitable civil proceeding, on the other hand, must prove only a right to lawful possession of the property and an equitable right to its return, and no presumptions exist in favor of the government.

*Id.* (internal quotation marks and citations omitted). However, a proceeding for return of property seized under § 881 as proceeds of illegal drug sales is nevertheless governed by "property rights defined

in § 881." *Id.* If at a hearing on the Rule 41(e) or civil equitable motion, the government establishes that the property is § 881(a) property—i.e., proceeds traceable to illegal drug transactions—then the claimant cannot prove a right to lawful possession and an equitable right to its return unless the claimant is an innocent owner. *Id.*

■ We adopt the remedy articulated by the Tenth Circuit: where a forfeiture is vacated for lack of notice and the statute of limitations has run against the government, the government may still quiet title to the property at issue but it loses the benefit of the presumptions it would have enjoyed if the claimant had been given notice of the forfeiture and timely filed a claim judicially contesting such forfeiture.[8]

### C

For the foregoing reasons, Alli–Balogun is entitled to return of the Range Rover if he "prove[s] only a right to lawful possession of the property and an equitable right to its return, and no presumptions exist in favor of the government." *Id.*

■ However, we need not remand this case for a hearing on Alli–Balogun's civil equitable motion, because the evidence in the hearing in district court, regardless of presumptions, demonstrates that Alli–Balogun is not entitled to relief. The evidence was that Alli–Balogun gainfully earned no more than $27,000 per year in the years 1985–91, during which time he supported a spouse and four children and paid more than $1,525 per month in real

estate expenses. The district court refused to credit Alli–Balogun's testimony that his income was not supplemented by the sale of drugs, and that he paid for the Range Rover out of his life savings accumulated from his years of gainful employment. We give deference to the district court's findings of fact and credibility determinations. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The Range Rover is therefore § 881(a) property. Accordingly, pursuant to § 881, Alli–Balogun cannot demonstrate his right to lawful possession of the Range Rover without showing that he is an innocent owner, which he does not assert. The district court properly dismissed Alli–Balogun's civil complaint for return of property.

### CONCLUSION

The judgment of the district court is affirmed.

---

8. This remedy may yield a result that is at odds with an earlier forfeiture proceeding. For example, the court may grant a claimant's civil motion for return of property after a determination that another claimant had a property interest and the government returned the property or the value thereof to that claimant. This is a risk the government

runs when it fails to give adequate notice to claimants. In any event, under the amended law, where such a situation arises "the Government may institute proceedings against a substitute sum of money equal to the value of the moving party's interest in the property at the time the property was disposed of." 18 U.S.C. § 983(e)(2)(B)(4).