Manuel CONCEPCION, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 95 CV 5337 ADS WDW,
97 CV 6369 ADS WDW.

United States District Court,
E.D. New York.

Jan. 13, 2004.

Manuel Concepcion, # 273–56–053, Coleman, FL, Pro Se Petitioner.

Roslynn R. Mauskopf, United States Attorney Eastern District of New York by: Jennifer Ellen Schantz, Assistant United States Attorney, Brooklyn, NY, for Respondent.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Manuel Concepcion ("Concepcion" or the "petitioner"), proceeding *pro se*, commenced these actions seeking the return of a 1988 Cadillac Seville ("Cadillac") that was seized and administratively forfeited by the Drug Enforcement Agency ("DEA"). The United States of America ("Government" or the "respondent") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") to dismiss these actions. For the reasons set forth below, the Government's motion is granted.

## I. BACKGROUND

The facts set forth in respondent's Rule 56.1 statement are deemed admitted when no opposition has been filed. *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 211 (2d Cir.2001). Given that Concepcion has failed to oppose the motion for summary judgment, the Government's Rule 56.1 statement is taken as true for the purposes of this motion and recites the following facts.

### A. The Petitioner's Purchase of the Cadillac

Between September 1988 until his arrested in March 1989, the petitioner was a leader of a Brooklyn-based wholesale and retail narcotics trafficking organization known as the "Unknown Organization" (the "Organization"). At its peak, the Organization received gross income from heroin sales totaling more than $10 million a month.

An investigation by the DEA revealed that Concepcion purchased a Cadillac with narcotics proceeds. In particular, law enforcement agents learned that, on or about October 10, 1988, Concepcion and three or four other men visited Dick Gidron Cadillac, Inc., a car dealership located in the Bronx. After being at the car dealership for approximately thirty minutes, Concepcion purchased the Cadillac. He agreed to trade his Ford Mustang Convertible, which was valued at an amount of $15,000, and to pay the sum of $16,509. The petitioner informed the car dealer that he wanted the name "Ralph Carreras" on the purchase agreement for insurance purposes and to match the registered name of the license plates of his Ford Mustang Convertible. The petitioner further informed the car dealer that he went by the names Manny Soto and Ralph Carreras. Concepcion left a deposit of $1,159 in cash. On October 11, 1988, the petitioner returned to the car dealership to pick up the Cadillac and to pay the remaining balance of $15,000 in cash.

### B. The March 14, 1989 Drug Transaction

In March 1989, Concepcion and other members of the Organization planned to purchase approximately 7½ kilograms of pure heroin from a government informant who was posing as a supplier. On March 10, 1989, the informant negotiated the sale of heroin worth a sum of $1,350,000 with Marc Ramirez, a drug broker. The heroin was to be packaged in fifteen units of seven hundred grams a piece. After several telephone calls, Ramirez told the informant that his people could only pay for ten units worth the sum of $990,000.

On March 14, 1989, Ramirez advised the informant that he was meeting with his money people at the Georgia Diner located in Queens. That day, law enforcement agents observed Concepcion, Ramirez, Robert Aponte, Juan Rivera, Adam Pomales, Ricardo Castor, and Feliz Aponte meeting and talking near the George Diner. At this meeting, Ramirez spoke with the informant over the telephone and arranged to exchange heroin for cash later that day at another diner, the Buccaneer in Queens. Concepcion, his associates, and Ramirez drove to the Buccaneer in separate vehicles. The petitioner, Robert Aponte and Ramirez drove a Ford Van. Rivera and Pomales followed the Ford Van in the Cadillac. Castro and Feliz Aponte followed the Cadillac in a Honda which broke down and never reached the Buccaneer.

At the Buccaneer, Ramirez spoke with the informant and then left to speak with the petitioner, Robert Aponte, Rivera, and Pomales, at which time the informant left the diner and crossed the street. The petitioner, Ramirez, and Robert Aponte

took four boxes and one black bag, which contained a total of $990,000, from the Ford Van and placed them in the informant's vehicle. While the money was being transferred, Rivera and Pomales remained in the Cadillac which was parked near the Ford Van.

Ramirez then followed the informant to a vehicle two blocks away, where the informant gave Ramirez ten units of purported heroin. Government agents interrupted the transaction, arrested Concepcion, Ramirez, Robert Aponte, Feliz Aponte, Pomales, and Rivera, and seized three weapons from the trunk of the Cadillac. Following the arrest, the government agents seized other items of property, including the Cadillac.

## C. The Petitioner's Indictment and Conviction

In September 1989, approximately 39 individuals were indicted in the matter *United States v. Melendez*, 89 CR 229. On August 28, 1990, superseding indictments were filed charging various defendants with narcotics distribution and conspiracy, racketeering, murder, and kidnaping in furtherance of racketeering activity and money laundering. Concepcion and nine others were tried together during a four-month jury trial.

On December 23, 1990, the petitioner was convicted of 11 counts of racketeering and money laundering, including being convicted of violating 18 U.S.C. § 1956 for engaging in a financial transaction—the purchase of the Cadillac—with narcotics proceeds in an effort to conceal and disguise the true source of such funds. Concepcion was also convicted of conspiring to violate 21 U.S.C. §§ 841 *et seq.* in connection with the attempt to purchase 7½ kilograms of heroin in the amount of $990,000. He was sentenced to life imprisonment, plus a mandatory consecutive five-year term of imprisonment for using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) count, and was ordered to pay a fine of $1,000,000 and a special assessment fee of $550. On appeal, the petitioner's conviction and sentence were affirmed in all respects.

## D. The Administrative Proceedings Regarding the Vehicle

On July 17, 1989, the DEA commenced an administrative proceeding by issuing a written notice of the seizure of the Cadillac via certified mail, return receipt requested, to the petitioner's last home address and to the Metropolitan Correctional Center ("MCC") where he was incarcerated at the time. On July 19, July 26, and August 2, 1989, the DEA published the notice of seizure in USA Today.

These written notices and publications explained that a claimant had the option of filing a claim and cost bond or an affidavit of indigency in lieu of the cost bond, in order to contest the forfeiture action. The written notices and the publications also set forth a claimant's option to file a petition for remission or mitigation within thirty days of the receipt of notice. In addition, these publications stated that the last day to file a claim was August 8, 1989. Having received no claim contesting forfeiture, on October 26, 1989, the DEA administratively forfeited the vehicle which was valued at $18,150. The vehicle was placed into official use and benefit of the United States.

## E. The Judicial Proceedings Regarding the Cadillac

On or about June 23, 1995, Concepcion commenced this action, *Concepcion v. United States*, 95 CV 5337, by filing a one paragraph letter with the Court which was construed as a motion for return of seized property, including the Cadillac. By order

dated August 30, 1996, the Court denied the petitioner's motion.

The petitioner then appealed the Court's order to the Second Circuit, arguing that the Government failed to demonstrate probable cause to warrant seizure and forfeiture of the various properties and that the Court improperly granted summary judgment in favor of the Government. On June 4, 1997, the Second Circuit affirmed the Court's order and held that the petitioner's challenge to the judicial forfeitures was untimely pursuant to Fed.R.Civ.P. 60(b), having been filed four years after the judicial forfeitures. With respect to Concepcion's challenge to the probable cause to support the administrative forfeitures, the Second Circuit held that it was properly denied by the Court because the "issue has been regularly held not be available in collateral proceedings."

On or about November 3, 1997, Concepcion commenced another action, *Concepcion v. United States,* 97 CV 6369, by filing a second motion for a return of the vehicle and other property seized in connection with his arrest. The petitioner again asserted the Government should return the seized Cadillac. In response, the Government submitted a May 20, 1998 declaration by Lawrence A. D'Orazio, Esq., Acting Forfeiture Counsel of the DEA, stating that, although the DEA was unable to locate the file relating to the seizure and forfeiture of the vehicle, the information in the DEA's computer database indicated that the written notices regarding the seizure and administrative forfeiture proceedings of the Cadillac were sent to the petitioner at three different addresses on July 17, 1989. The declaration also stated that the notices of seizure and administrative forfeiture were published on July 19, July 26, and August 2, 1989 in USA Today.

On May 27, 1998, the petitioner filed a motion pursuant to Fed.R.Civ.P. 60(b)(1),

(3), and (6) to set aside the judgment entered against him in the first action. On November 25, 1998, the Court denied the motion, holding that "in light of the Second Circuit's opinion affirming the August 30, 1996 decision, the petitioner's motion to set that decision aside, approximately nine years after the seizure and forfeiture, is without merit or legal foundation." The Court further held that the Government reasonably notified the petitioner of the forfeiture proceedings and that he was given a reasonable opportunity to submit a claim to the Cadillac.

Thereafter, the petitioner appealed the Court's November 25, 1998 order, arguing principally that the Court applied an erroneous legal standard in determining that notice had been properly served on him in connection with the forfeiture of the Cadillac. The Government requested that the Second Circuit remand that portion of the appeal to this Court for a hearing on the merits regarding the petitioner's claim to the Cadillac. This request was based on the Second Circuit's decision in *Weng v. United States,* 137 F.3d 709 (2d Cir.1998), which held, among other things, that mailing of a notice of administrative forfeiture to a custodial institution was inadequate unless the notice is in fact delivered to the intended recipient. Although the DEA sent written notices of the seizure of the vehicle and the institution of administrative forfeiture proceedings by certified mail, return receipt requested, to the petitioner's last home address and to the MCC, where the petitioner acknowledged he was incarcerated, the Government conceded that it could not demonstrate at the time that Concepcion received actual notice.

By Summary Order, dated January 14, 2000, with the Government's consent, the Second Circuit vacated the Court's judgment and remanded these actions for

further proceedings with respect to the petitioner's claim for the return of the Cadillac. In addition, the Second Circuit affirmed, in all respects, the decision of this Court denying the petitioner's claim for the return of other property.

The Government now moves for summary judgment to dismiss these actions.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

When deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir.1995). In the case of a *pro se* party, the court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, *pro se* status " 'does not exempt a party from

compliance with relevant rules of procedural and substantive law.'" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

Where, as here, a nonmoving *pro se* party has failed to submit papers in opposition to the motion for summary judgment, summary judgment may be granted only if the undisputed facts "show that the moving party is entitled to a judgment as a matter of law." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996). In addition, the Second Circuit has cautioned that a district court may grant the motion only if the *pro se* party has received notice that failure to respond to the motion "will be deemed a default." *Id.* Here, the Government included with its motion a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," which informed the petitioner that failure to oppose the motion may result in a dismissal of the complaint. The Government also affixed to the Notice a copy of Fed.R.Civ.P. 56.

### B. Forfeiture

■ The Government contends that the Court need not decide whether the Government's efforts to give Concepcion notice of the administrative forfeiture proceedings were reasonable under the circumstances. Even assuming that the notice was not reasonably calculated under the circumstances, argues the Government, dismissal of the complaint for the return of the vehicle is appropriate under the standard set forth *Alli–Balogun v. United States*, 281 F.3d 362 (2d Cir.2002). The Court agrees.

In *Alli–Balogun*, the Second Circuit decided the issue of a claimant's remedy when an administrative forfeiture is effected without notice to the claimant and the government's five-year period for commencing a forfeiture proceeding has ex-

pired. In that case, a claimant sought the return of a seized vehicle pursuant to his arrest for importing and conspiring to import heroin on the ground that the administrative forfeiture was conducted without adequate notice. In affirming the district court's order dismissing the complaint, the Second Circuit determined that, although the declaration of forfeiture violated the claimant's rights because of the deficient notice, he was not entitled to the return of his vehicle. The Second Circuit held that "where a forfeiture is vacated for lack of notice and the statute of limitations [for commencing a forfeiture proceeding] has run against the government, the government may still quiet title to the property at issue [in a civil equitable proceeding based upon a Rule 41(e) or equitable civil motion], but it loses the benefit of the presumptions it would have enjoyed if the claimant has been given notice of the forfeiture and timely filed a claim judicially contesting such forfeiture." *Id.* at 372.

In distinguishing between a forfeiture action and a Rule 41(e) or equitable civil proceeding, the Second Circuit in *Alli–Balogun* explained:

> **In a forfeiture action, if the government established that it had probable cause to seize the subject property, the claimant bears the burden of proving that the requested forfeiture does not fall within the four corners of the statute and if no such rebuttal is made, a showing of probable cause alone will support a judgment of forfeiture. A claimant in a Rule 41(e) or equitable civil proceeding, on the other hand, must prove only a right to lawful possession of the property, and an equitable right to its return, and no presumptions exist in favor of the government.**

*Id.* at 371 n. 10. It further stated that "[i]f at a hearing on the Rule 41(e) or civil equitable motion, the government establishes that the property is [21 U.S.C.] § 881(a) property—*i.e.,* proceeds traceable to illegal drug transactions—then the claimant cannot prove a right to lawful possession and an equitable right to its return unless the claimant is an innocent owner." *Id.* at 372 (citing *United States v. Clymore,* 245 F.3d 1195, 1201 (10th Cir. 2001)). Because evidence presented at a probable cause hearing demonstrated that the funds used to purchase the vehicle were derived from the claimant's criminal conduct and not legitimate income, the Second Circuit found that the vehicle was Section 881(a) property and that the claimant could not demonstrate his right to lawful possession.

In this case, the Court notes that the Government does not expressly state that the forfeiture of the vehicle is void for lack of adequate notice or that the statute of limitations has expired for new forfeiture proceedings. Nor does it assert that it properly invoked its statutory remedy of administrative forfeiture. Rather, because the Government's papers address only whether the property is Section 881(a) property, whether Concepcion has an equitable interest in the vehicle, and whether he is an innocent owner, it appears that the Government is moving for summary judgment to seek quiet its title to the property under the standards set forth *Alli–Balogun.* In doing so, the Government properly asserts that Concepcion is unable to establish that he has a right to lawful possession of the vehicle and an equitable right to its return.

The Government contends that collateral estoppel prevents the petitioner from showing he has an equitable right to the vehicle. Collateral estoppel applies if each of the following elements are met: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceed-

ing was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir.1999).

Here, in the related criminal trial, a jury found that Concepcion engaged in a financial transaction—the purchase of the Cadillac—with narcotics proceeds in an effort to conceal and disguise the true source of such funds in violation of 18 U.S.C. § 1956, and that the petitioner had conspired to violate 21 U.S.C. §§ 841 *et seq.* in attempting to purchase 7½ kilograms of heroin in the amount of $990,000. The petitioner had a full and fair opportunity to litigate the instant issues in the prior criminal proceeding. In addition, the Second Circuit affirmed Concepcion's conviction in all respects. As such, the petitioner is estopped from challenging these crucial facts: (1) the vehicle was purchased with narcotics proceeds in violation of 18 U.S.C. § 1956; and (2) the vehicle was used in an effort to facilitate an illegal narcotics transaction in violation of 21 U.S.C. §§ 841 *et seq.* These facts, the evidence introduced during the criminal trial which resulted in the petitioner's conviction, and the Government's undisputed facts set forth in its papers leave no question that the vehicle is Section 881(a) property. As such, Concepcion does not have a right to lawful possession of the vehicle and an equitable right to its return.

As no genuine issues of material fact exist regarding the character of the vehicle as Section 881(a) property, the Court next determines whether Concepcion is an "innocent owner" under 18 U.S.C. § 983. Given the absence of any opposing papers, Concepcion has made no showing that he was an "innocent owner." Accordingly, the Court grants the Government's motion for summary judgment dismissing the complaint for return of the Cadillac. In addition, the Court quiets title to the vehicle in favor of the Government.

## III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Government's motion for summary judgment dismissing the complaint in its entirety is **GRANTED**; and it is further

**ORDERED**, that the Court quiets title to the property in favor of the Government; and it is further

**ORDERED**, that the Clerk of the Court is directed to close both these cases.

**SO ORDERED.**