

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-3-2002

# Mantilla v. USA

Precedential or Non-Precedential: Precedential

Docket No. 99-5923

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Mantilla v. USA" (2002). *2002 Decisions.* Paper 548.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/548

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed September 3, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5923

EDUARDO MANTILLA,
        Appellant

v.

UNITED STATES OF AMERICA;
U.S. CUSTOMS SERVICE

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 99-cv-00287)
District Judge: Honorable John C. Lifland

Argued February 4, 2002

Before: SLOVITER, and AMBRO, Circuit Judges
POLLAK,* District Judge

(Opinion filed: September 3, 2002)

        Mark H. Lynch, Esquire
        Keith Noreika, Esquire (Argued)
        Covington & Burling
        1201 Pennsylvania Avenue, N.W.
        Washington, DC 20004
         Attorneys for Appellant

_____

* Honorable Louis H. Pollak, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.


        Robert J. Cleary
        United States Attorney
        Colette R. Buchanan (Argued)
        Assistant U.S. Attorney
        Office of United States Attorney
        970 Broad Street, Room 700
        Newark, NJ 07102
         Attorneys for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

Eduardo Mantilla filed this civil action seeking the return
of funds that the United States Customs Service
("Customs") obtained from him and his co-conspirators
during an undercover operation. Finding that public policy
bars the return of funds that are voluntarily exchanged

during a narcotics transaction, the United States District Court for the District of New Jersey granted summary judgment in favor of Customs.1

We affirm the District Court's judgment. Mantilla lacks standing to seek the return of one portion of the funds. As to the remaining amount, we agree with the District Court that an extension of the in pari delicto2 concept prevents Mantilla from seeking its return.

I. Background

In early 1991, Customs began an undercover narcotics investigation of Mantilla, Robert Jonas, Michael Mittenberg,

_____

1. Although the United States and Customs are appellees, we will refer to both collectively as Customs.

2. Although commonly referred to as in pari delicto, the concept's full title is in pari delicto potior est conditio defendentis, meaning "in case of equal fault the condition of the party defending is the better one." United States v. Farrell, 606 F.2d 1341, 1348 & n.21 (D.C. Cir. 1979). Recognized as a defense in both law and equity, in pari delicto dictates that "[n]either party to an illegal contract will be aided by the court, whether to enforce it or set it aside." Id.; see infra  S V (discussing Farrell).

2

and Enidio Abreu. Through negotiations with Mantilla and/or Jonas, undercover Customs agents, posing as drug smugglers, transported large quantities of cocaine and marijuana from Colombia to the United States in exchange for $9,000,000. Of this amount the agents required a payment of $1,000,000 "up front" prior to releasing the narcotics to Mantilla and his co-conspirators.

The parties agreed to meet at a specific location in Jersey City, New Jersey to complete the arrangement. There, Mantilla and his co-conspirators would deliver a truck containing $1,000,000 to the agents. The agents would then drive away in the truck, take the fee, and return the truck filled with cocaine.

The transaction occurred on May 30, 1991. Abreu drove the truck to the pre-arranged site. He parked the truck and handed the keys to Mantilla, who in turn handed them to an agent. The transaction continued as planned until the agent discovered that the truck contained only $900,000. Extensive, and presumably intense, negotiations ensued, after which Mantilla and his co-conspirators represented that the missing $100,000 would be available later that day.

The parties agreed to complete the transaction at a diner in nearby Elizabeth, New Jersey. Mittenberg and Jonas traveled in a van and followed the agents to the location. However, before the final transfer occurred, the agents stopped the van and arrested both passengers. Upon

searching the vehicle the agents "found nearly all of the missing money in a paper bag under the rear seat" -- approximately $95,500. The agents subsequently arrested Mantilla in the diner parking lot.

On June 19, 1992, a jury sitting in the United States District Court for the District of New Jersey found Mantilla guilty of three counts of conspiring to import, distribute, and/or possess with an intent to distribute, cocaine and marijuana in violation of 21 U.S.C. SS 846 and 963.

Customs never instituted administrative forfeiture proceedings against the money obtained from the co-conspirators. Instead, it deposited the funds into its

undercover operation account pursuant to 19 U.S.C.S 2081.3 The five-year statute of limitations for initiating forfeiture proceedings lapsed after May 31, 1996. 19 U.S.C.S 1621.

Eventually, Mantilla filed a Freedom of Information Act complaint, through which he received information regarding the status of the confiscated funds. On February 10, 1997, Mantilla filed his initial return of property complaint in the United States District Court for the Southern District of Florida. That Court dismissed the action for improper venue, and the United States Court of Appeals for the Eleventh Circuit affirmed on January 4, 1999. Mantilla v. United States, 168 F.3d 506 (11th Cir. 1999) (unpublished table decision).

On February 19, 1999, Mantilla filed this action, his second return of property complaint, in the United States District Court for the District of New Jersey. Customs responded by filing a motion to dismiss for lack of subject matter jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief can be granted. Because Customs attached a supporting affidavit, the District Court construed the pleading as a motion for summary judgment. See Fed. R. Civ. P. 12(b) (stating that if, on a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").

In its September 29, 1999 memorandum opinion and order, the District Court granted summary judgment for Customs, finding that an extension of the in pari delicto concept prevented it from enforcing an illegal contract by returning funds that Mantilla voluntarily delivered to undercover Customs agents. The Court also held that Mantilla had no viable claim under S 704 of the Administrative Procedure Act ("APA") because the voluntary transfer, rather than seizure, of the funds did not constitute "agency action" necessary to trigger "the limited abrogation of sovereign immunity provided by the APA." To

3. Because we affirm on alternative grounds, we do not address Customs' contention that forfeiture proceedings were unnecessary because it acted in accordance with 19 U.S.C. S 2081.

4

the extent the complaint sought equitable relief, the District Court denied the claim as against public policy. Finally, the District Court rejected Mantilla's Fifth Amendment unlawful taking and due process arguments, neither of which Mantilla raises on appeal.

## II. Jurisdiction

We reject Customs' contention that no statutory provision authorizes our jurisdiction over Mantilla's claim. We have previously held that a claimant's "collateral[ ] attack [of] an inadequately noticed administrative forfeiture" presents a proper federal question, thereby conferring jurisdiction under 28 U.S.C. S 1331. Foehl v. United States, 238 F.3d 474, 478 (3d Cir. 2001) (citation omitted); United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000) (en banc). Such challenges usually arise where the Government attempted, but failed to take all measures necessary under due process, to give notice of forfeiture. Foehl, 238 F.3d at 478–80; McGlory, 202 F.3d at 671-74. We agree with Mantilla that his claim is a natural extension of these decisions. Indeed, this case involves the most inadequate notice possible: Customs failed to initiate forfeiture proceedings altogether, and thus never attempted to give notice of the funds' status.4

## III. Standing

We turn next to Mantilla's standing, an issue that we must address even though the District Court did not reach it. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31 (1990). To prove standing, Mantilla must show that he has a colorable ownership or possessory interest in the funds. United States v. Contents of Account Nos. 3034504504 and 144-07143, 971 F.2d 974, 985 (3d Cir. 1992). Because Customs obtained the two amounts--$900,000 and $95,500--under distinct circumstances, Mantilla must establish his standing as to each. See Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000).

_____

4. Because we recognize Mantilla's claim as lying in equity, we do not address whether S 704 of the APA authorizes his return of property action.

5

As to the first amount, it is undisputed that a co-conspirator drove the truck containing the $900,000, parked the vehicle, and handed the keys to Mantilla. Mantilla then handed the keys to the Customs agent. Thus, Mantilla did possess the funds at the time of transfer.

Customs contends that Mantilla is a "straw owner" of the funds, in which case mere possession--without"some explanation or contextual information regarding the claimant's relationship to the seized property"--would be insufficient to establish standing. United States v. $515,060.42, 152 F.3d 491, 498 (6th Cir. 1998); see Contents of Accounts Nos. 3034504504 and 144-07143 , 971 F.2d at 985 (expressing disapproval of "standing claims put forward by nominal or straw owners"). Nevertheless, we shall assume that Mantilla's possessory interest is enough to confer standing as to the $900,000 amount.

However, we conclude that Mantilla lacks standing to seek the return of the $95,500 amount. The facts show that Customs agents confiscated this amount from a vehicle that Mantilla did not own, possess, or occupy. Further, Mantilla offers no evidence from which a reasonable trier of fact could discern his colorable interest in this amount.5 Accordingly, Mantilla has no standing to pursue its return.

_____

5. We pause to address one statement cited by Mantilla as proof of his colorable interest in the $95,500. As part of Mantilla's Freedom of Information Act claim, a Customs attorney filed a declaration describing her investigation of the funds' forfeiture status. The attorney communicated with a paralegal in the Newark, New Jersey Customs office, who in turn discussed Mantilla's claim with an agent involved in the case. As the attorney's declaration states:"The agent verbally informed the paralegal that the $1,000,000.00, technically, was never seized from Eduardo Mantilla nor was it forfeited to the government since it was turned over to United States Customs Agents by Eduardo Mantilla as drug exchange money." Mantilla relies on this statement as evidence that he "exercised possession and control over the entire $1,000,000." Leaving aside our concerns regarding the statement's reliability--particularly where Mantilla's Freedom of Information Act claim arguably misled the attorney into lumping the $900,000 and $95,500 into one amount--we find the statement of the Customs attorney, containing thirdhand information, irrelevant. By contrast, in our case a Customs agent with firsthand knowledge of the undercover operation filed an affidavit that described the material facts on which we rely. Further, Mantilla conceded the accuracy of this affidavit as to all relevant events. In the face of such evidence, no reasonable factfinder could find that Mantilla has standing as to the $95,500 amount.

IV. Procedural Issues

With Mantilla's cause of action now limited to the $900,000 sum, we address Customs' arguments that three procedural hurdles--sovereign immunity, the statute of limitations, and laches--bar his claim.

A. Sovereign Immunity

Sovereign immunity presents no barrier to Mantilla, as Foehl dictates that he may properly assert his equitable claim "via the waiver of sovereign immunity found in section 702 of the Administrative Procedure Act." 238 F.3d

at 478; see also United States v. 1461 W. 42nd St., Hialeah, Fla., 251 F.3d 1329, 1340 (11th Cir. 2001) ("[C]laims for equitable relief, such as the return of property . .. , do not impinge upon sovereign immunity.").

B. Statute of Limitations

28 U.S.C. S 2401 imposes a six-year statute of limitations on Mantilla's return of property claim. This six-year period begins "at the close of forfeiture proceedings" or "if no forfeiture proceedings were conducted, at the end of the five-year limitations period during which the government is permitted to bring a forfeiture action." Polanco v. DEA, 158 F.3d 647, 654 (2d Cir. 1998); 19 U.S.C. S 1621 (establishing five-year statute of limitations for Customs to institute forfeiture proceedings). The latter circumstance arose in this case, and therefore Customs' statute of limitations lapsed after May 30, 1996, five years following actual confiscation of the funds on May 30, 1991. Accordingly, Mantilla had until May 30, 2002 to file his claim, a time bar which his February 19, 1999 complaint easily satisfied.6

_____

6. Ironically, Mantilla's claim is timely even if we measure the six-year bar from May 30, 1991, i.e., when Customs confiscated the funds. Under this scenario, his time to file would ordinarily lapse after May 30, 1997. However, the proceeding in the Southern District of Florida and the Eleventh Circuit Court of Appeals-- begun by Mantilla's timely complaint filed on February 10, 1997--would toll the statute of limitations. Burnett v. New York Cent. R.R., 380 U.S. 424, 430 (1965) ("Both federal and state jurisdictions have recognized the unfairness of barring a plaintiff 's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run."). The statute

C. Laches

Because Mantilla's claim survives the statute of limitations, the equitable defense of laches is presumptively inapplicable. United States v. One Toshiba Color Television, 213 F.3d 147, 158 (3d Cir. 2000) ("[I]f a suit is brought within the statutory period, laches would generally be unavailable."). Further, this case does not involve circumstances that support a laches defense. Pappan Enter., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 804 (3d Cir. 1998). The record suggests neither Mantilla's lack of diligence in filing his complaint nor Customs' prejudicial reliance on Mantilla's delay. Id.; see United States v. Marolf, 173 F.3d 1213, 1218-19 (9th Cir. 1999) (rejecting the Government's laches argument where the failure to initiate forfeiture proceedings arose from the "government's own carelessness," not the timing of the claimant's return of property complaint).

V. The Farrell Rule

Finally reaching the primary basis for the District Court's judgment, we agree that an extension of the in pari delicto

concept prevents Mantilla from using the courts to recover the $900,000 amount that he voluntarily transferred to Customs agents. "It has long been the settled rule that property delivered under an illegal contract cannot be recovered back by any party in pari delicto." United States v. Farrell, 606 F.2d 1341, 1348 (D.C. Cir. 1979) (citation omitted). Courts have traditionally applied this rule to prevent the return of funds used in an attempted bribery. See Clark v. United States, 102 U.S. 322, 331-32 (1880). Farrell extended the ambit of the policy to prevent the return of funds that were voluntarily exchanged as part of

---

of limitations would begin accruing again on January 4, 1999 when the Eleventh Circuit affirmed the dismissal of the complaint for improper venue. Presumably, Mantilla would have had almost four months--i.e., the time period between his February 10, 1997 filing and the initial time bar of May 30, 1997--to refile his claim in the District of New Jersey. Accordingly, Mantilla's second complaint, filed February 19, 1999, would be timely under this alternative reading of the statute of limitations.

8

a narcotics transaction. There, a claimant sought the return of $5,000 paid to an undercover DEA agent as part of what the claimant believed was an illegal contract to purchase heroin. Unlike the current version of 21 U.S.C. S 881(a)(6), the statute at that time did not provide for the forfeiture of money furnished in exchange for a controlled substance. Nevertheless, the D.C. Circuit held that

> it is contrary to public policy to permit the courts to be used by the wrongdoer Farrell to obtain the property he voluntarily surrendered as part of his attempt to violate the law. If as the cases hold it is sound public policy to deny the use of the courts to persons [i]n pari delicto who seek the return of illegally paid money, [a] fortiori it is sound public policy to deny the aid of the courts to a single violator of the law who seeks the return of money paid to a government agent in an attempt to contract for the purchase of contraband drugs.

Farrell, 606 F.2d at 1350.

The Eighth Circuit subsequently applied the Farrell rule to prevent the return of $25,000 which a claimant transferred to undercover agents in an attempt to purchase hashish. United States v. Smith, 659 F.2d 97, 100 (8th Cir. 1981); see also Acheampong v. United States, C.A. Nos. 99 Civ. 2169, 99 Civ. 3491, 2000 WL 1262908, at *5 (S.D.N.Y. Sept. 5, 2000) (citing Farrell with approval); United States v. Kim, 738 F. Supp. 1002, 1004-05 (E.D. Va. 1990) (same).

We find Farrell's reasoning persuasive and apply it here to bar the return of the $900,000.[7] Unlike the version enacted when the D.C. Circuit decided Farrell , S 881(a) now authorizes the forfeiture of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for

a controlled substance." S 881(a)(6). However, we reject Mantilla's contention that this statutory revision established S 881(a)(6) as the only means by which the

---

7. The Farrell rule is inapplicable to the $95,500 because that money was not voluntarily transferred to the Customs agents. Nevertheless, as discussed above, Mantilla's lack of standing bars his claim as to that amount.

9

Government may retain funds intended for the purchase of narcotics. Cf. United States v. Clymore, 245 F.3d 1195, 1200 (10th Cir. 2001) (stating that, in addition to S 881(a)'s procedures, the Government may quiet title in seized contraband through a criminal proceeding, a Fed. R. Civ. P. 41(e) equitable proceeding, or a "civil motion brought by one who alleges a lawful right to possession"). Further, S 881(a)(6)'s legislative history does not evidence congressional intent to limit the application of common law principles in the context of forfeiture proceedings. See Psychotropic Substance Act of 1978, Pub. L. No. 95-633, 1978 U.S.C.C.A.N. (92 Stat. 3777) 9496, 9522-23 (discussing S 881(a)'s amendment).

Accordingly, we hold that the Farrell rule--with its foundation lying in the long-recognized concept of in pari delicto--remains viable and thus prevents the return of the $900,000 sum that Mantilla voluntarily exchanged in an undercover narcotics transaction.

* * * * *

For the foregoing reasons, we affirm the District Court's grant of summary judgment.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

10