**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1528**

---

DAVID A. BABB,

                                        Plaintiff - Appellant,

        versus

U.S. DRUG ENFORCEMENT AGENCY,

                                        Defendant - Appellee,

        and

WILLIAM LUNSFORD, Seizing DEA Agent,

                                                Defendant.

---

**No. 04-1902**

---

DAVID A. BABB,

                                        Plaintiff - Appellee,

        versus

U.S. DRUG ENFORCEMENT AGENCY,

                                        Defendant - Appellant.

Appeals from the United States District Court for the District of South Carolina, at Greenville. Henry M. Herlong, Jr., District Judge. (CA-97-1553-6-20)

Argued: March 16, 2005                    Decided: August 26, 2005

Before TRAXLER and DUNCAN, Circuit Judges, and Frederick P. STAMP, Jr., United States District Judge for the Northern District of West Virginia, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Brian William Shaughnessy, SHAUGHNESSY, VOLZER & GAGNER, Washington, D.C., for David A. Babb. Stefan Dante Cassella, UNITED STATES DEPARTMENT OF JUSTICE, Asset Forfeiture & Money Laundering, Washington, D.C., for the U.S. Drug Enforcement Agency. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Marvin Jennings Caughman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for the U.S. Drug Enforcement Agency.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

In 1993, the government administratively forfeited $57,690 in cash seized from David Anthony Babb during a drug sting operation. In 1998, Babb brought an equitable action challenging the administrative forfeiture. The district court invalidated the forfeiture, concluding that the government's attempts to notify Babb, who was incarcerated at the time, were insufficient for the government to take advantage of the summary administrative forfeiture process. Upon learning that the administrative forfeiture was invalid, the government immediately commenced a judicial forfeiture proceeding and successfully obtained an order of forfeiture following a bench trial. On appeal, however, this court determined that the government's judicial forfeiture action was barred by the statute of limitations and declined to apply equitable tolling to stay the limitations period between 1993 (when it administratively forfeited the currency) and 1998 (when it first learned the administrative proceeding was invalid). See United States v. Babb, 54 Fed. Appx. 772, 774 (4th Cir. 2003) (per curiam).

Following the appeal in the judicial forfeiture action, Babb returned to district court and moved for the return of the cash seized from him, as well as interest and related attorney's fees. The district court entered an order awarding Babb the money but denying him interest and fees. The parties now cross-appeal that

3

order.  The primary issue is whether the district court should have returned the money to Babb in the first place.  The government claims that the district court committed error by returning the currency to Babb without requiring him to show that he is legally entitled to the money.  Babb, however, claims that he was entitled to a return of the currency as a result of the government's failure to quiet title to the currency through statutory forfeiture proceedings.  We conclude that although a forfeiture proceeding, with its presumptions in favor of the government, may be the easiest means to quiet title in seized property, it is not the government's exclusive means.  The government may still quiet title by demonstrating that Babb is not lawfully entitled to the currency.  Because there has not yet been a determination as to whether Babb may lawfully claim this money, we vacate and remand for the court to make such a determination.

I.

In June 1991, a confidential informant identified for police officers in Spartanburg, South Carolina, a number of individuals, including Babb, who were interested in purchasing marijuana. Officers used the informant to arrange an undercover transaction, during which Babb was arrested.  Immediately after the arrest, officers seized from Babb $57,960 in cash.  State prosecutors initially retained custody of the cash seized from Babb and

4

commenced a civil forfeiture proceeding, but they later dropped the proceedings, allowing the Drug Enforcement Agency (the "DEA") to pursue the money in federal court.

In September 1993, the DEA brought an administrative forfeiture action, see 19 U.S.C.A. § 1609 (West 1999), a procedure which enables the government to quiet title to seized property without judicial process. In this summary forfeiture proceeding, the agency seeking forfeiture must publish notice that it intends to declare forfeiture of the seized property and furnish notice to interested parties. See 19 U.S.C.A. § 1607 (West 1999). If no person files a timely claim for the property, the government may declare the property forfeited. See 19 U.S.C.A. § 1609. If, however, a claim is filed, the government must then commence judicial forfeiture proceedings. See 19 U.S.C.A. §§ 1608 (West 1999); see also United States v. Minor, 228 F.3d 352, 354 (4th Cir. 2000).[1] Because no claim was filed after the government sent its

_____

[1]If a claimant files a claim asserting that the seized property is not subject to forfeiture, then the administrative proceedings halt and the agency conducting the forfeiture must refer the case to the United States Attorney for the commencement of a judicial forfeiture proceeding (under 21 U.S.C.A. § 881 (West 1999) for drug seizures). At that point, the government must show that there was probable cause to believe that the seized property was subject to forfeiture. If the government carries this relatively light burden, a presumption arises that the government is entitled to the property. The burden then shifts to the claimant to show either that the property is not subject to forfeiture or that he is an innocent owner.

notice of forfeiture, the DEA declared the $57,960 administratively forfeited in December 1993.

In 1997, Babb brought an action in federal court to invalidate the administrative forfeiture, alleging that it was invalid because he did not receive sufficient notice. On May 20, 1998, the district court agreed and ordered that "the DEA must either return the money to Babb or commence judicial forfeiture proceedings in the district court." JA 35-36.[2]

In July 1998, the government commenced a judicial forfeiture proceeding. Babb moved to dismiss, arguing that the proceeding was time-barred by 19 U.S.C.A. § 1621, which required the government to commence a judicial forfeiture action "within five years after the time when the alleged offense was discovered."[3] The district court, however, ruled that the statute of limitations was equitably tolled from the time the DEA initiated administrative proceedings until the time the administrative proceedings were invalidated. The district court then conducted a bench trial and found that the $57,960 should be forfeited to the DEA. The evidentiary basis for

---

[2]The government did not appeal this ruling--only Babb did, and on a point not relevant here. See Babb v. United States Drug Enforcement Admin., 172 F.3d 862, 1999 WL 31159 (4th Cir. Jan. 26, 1999) (unpublished).

[3]Congress amended the statute to require a forfeiture action to be commenced "within five years after the time when the alleged offense was discovered" or "within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later." 19 U.S.C.A. § 1621 (West Supp. 2005).

the court's conclusion included testimony that the "currency was seized from Babb as he attempted to use it to purchase marijuana," that Babb was involved in drug trafficking, and that Babb lacked employment during the relevant time frame. J.A 42. Babb appealed.

This court reversed, concluding that equitable tolling was not appropriate because the administrative proceeding was void, having never been properly commenced by the DEA in the first place. See United States v. Babb, 54 Fed. Appx. 772, 774 (4th Cir. 2003) (per curiam). Accordingly, equitable tolling was not available and the DEA's judicial forfeiture action was time-barred by 19 U.S.C.A. § 1621. We therefore reversed the order of the district court granting the DEA title to the currency and remanded for further proceedings.

In January 2004, Babb filed a "Motion for Return of Property," seeking an order directing that the government return the currency and pay "interest on the corpus since the date of the seizure," as well as related attorney's fees. J.A. 50. Babb filed this motion under the same caption and civil action number as his action to set aside the administrative forfeiture. Indeed, the motion for return of the $57,960 was based solely upon the order of the district court entered in that action on May 20, 1998, directing the DEA to return the money to Babb or commence judicial forfeiture proceedings. Babb requested interest and attorney's fees pursuant to the Civil Asset Forfeiture Reform Act("CAFRA") of 2000, see 28

7

U.S.C.A. 2465 (West Supp. 2005), and the Equal Access to Justice Act, see 28 U.S.C.A. § 2412 (West 1994 & Supp. 2005).

On March 1, 2004, the district court denied Babb's request for interest and attorney's fees, but did not address Babb's motion for the currency itself. Babb then filed a pro se motion to alter or amend the judgment, seeking a more specific ruling with respect to the currency still held by the DEA. On May 21, 2004, the district court issued an order reaffirming its denial of interest and fees, but adding a directive that judgment be entered on behalf of Babb in the amount of $57,960.

Babb appeals from the district court's order denying interest and attorney's fees on the $57,960 seized from Babb during the drug transaction. The government cross-appeals the district court's judgment awarding Babb the currency. We address the government's cross-appeal first because Babb's claim for interest and attorney's fees arises only if he is entitled to the currency in the first place.

II.

The government argues that, despite its unsuccessful attempts to use the shortcuts and presumptions afforded through statutory administrative and judicial forfeiture proceedings, Babb is not entitled to the return of the $57,960 seized from him during the undercover drug sale. Relying on decisions by the Second and Tenth

8

Circuits, the government argues that its failure to quiet title to the currency by means of civil forfeiture proceedings does not automatically vest title in Babb, because such a result would give Babb presumptive ownership rights in currency seized in connection with illegal drug trafficking and relieve him of the burden of proving lawful entitlement to the currency. See Alli-Balogun v. United States, 281 F.3d 362, 371-72 (2nd Cir. 2002); United States v. Clymore, 245 F.3d 1195, 1200 (10th Cir. 2001). We agree with the government for two interrelated reasons.

First, a civil forfeiture proceeding is not the exclusive means for the government to quiet title to property it has seized in connection with criminal activity. For example, the government may quiet title to such property as part of a criminal proceeding wherein it alleges a forfeiture count in the indictment and proves, by a preponderance of the evidence, that the subject property was "derived from the proceeds of illegal drug activities, or . . . used in any way to facilitate the commission of such violations." United States v. Tanner, 61 F.3d 231, 233 (4th Cir. 1995); see 21 U.S.C.A. § 835(a) (West 1999). The government may also settle the issue of title to the confiscated property as a defendant or respondent in an equitable proceeding brought by the claimant for the return of the property. See United States v. Minor, 228 F.3d 352, 355-57 (4th Cir. 2000) (holding that an equitable cause of action lies for a claimant seeking to invalidate an administrative

9

forfeiture and recover currency seized during drug arrest); see also Alli-Balogun, 281 F.3d at 371 (explaining that alternative to forfeiture proceedings is "opposi[tion] [to] a . . . civil equitable motion filed by the claimant"); Clymore, 245 F.3d at 1200 ("The government . . . does not have to quiet title to § 881 property only through civil forfeiture proceedings. . . [T]he government may [instead] be awarded quiet title to confiscated property in a civil equitable proceeding . . . brought by one who alleges a lawful right to possession.").

Because this latter means of quieting title to seized property--responding to a claimant's equitable action--is essentially a back-door method for the government to retain the property, it presents greater procedural obstacles to the government. When the government fails to utilize the statutory forfeiture process, it

> can still perfect its title to the seized property, but rather than do so by means of a judicial forfeiture proceeding in which the government's case is assisted by presumptions, it is relegated to opposing a Rule 41(e) or civil equitable motion filed by the claimant in which the government "los[es] the benefit of the opportunity to perfect its right to title by using the statutory shortcuts, presumptions, and statutory burdens of proof."

Alli-Balogun, 281 F.3d at 371 (quoting Clymore, 245 F.3d at 1201). The Tenth Circuit provided this concise comparison:

> In a forfeiture action, if the government establishes probable cause to seize the subject property, the claimant bears the burden of proving that the requested forfeiture does not fall within the four corners of the statute [and i]f no such rebuttal is made, a showing of

probable cause alone will support a judgment of
forfeiture. A claimant in a Rule 41(e) or equitable
proceeding, on the other hand, must prove only a right to
lawful possession of the property and an equitable right
to its return, and no presumptions exist in favor of the
government.

Clymore, 245 F.3d at 1201.

Second, as the foregoing discussion suggests, a party who
claims that the government must return seized property still must
demonstrate lawful entitlement to the property and an equitable
right to its return. Even when the claimant does not face the more
daunting task of challenging forfeiture, he must make at least a
threshold showing of lawful entitlement. See United States v.
Maez, 915 F.2d 1466, 1468 (10th Cir. 1990). Usually, this showing
is minimal, as "the person from whom the property was seized is
presumed to have a right to its return." United States v.
Chambers, 192 F.3d 374, 377 (3rd Cir. 1999). The burden then
shifts to the government, which must "demonstrate that it has a
legitimate reason to retain the property." Id. The government
meets this burden if, "at a hearing on the Rule 41(e) or civil
equitable motion, [it] establishes that the property is § 881(a)
property--i.e., proceeds traceable to illegal drug transactions."
Alli-Balogun, 281 F.3d at 372. At that point, "the claimant cannot
prove a right to lawful possession and an equitable right to its
return unless the claimant is an innocent owner." Id.

If the currency seized from Babb was automatically returned to
him because it was not forfeited, Babb would essentially enjoy an

11

irrebutable presumption of ownership in property seized in connection with a drug transaction. Such a result does not square with federal law, under which "no property right shall exist in . . . moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance," "proceeds traceable to such an exchange," or "moneys . . . used or intended to be used to facilitate any violation of [drug trafficking laws]." 21 U.S.C.A. § 881(a)(6) (West 1999).[4] There is no exception to the prohibition against property rights in § 881(a)(6) property that applies when the government does not quiet title through forfeiture proceedings. Only an innocent owner can claim ownership rights when such property was lawfully seized.[5]

In sum, even when the government is foreclosed from perfecting its title to drug-related currency via forfeiture proceedings, or fails to pursue forfeiture in the first place, the government may

---

[4]In fact, when the government seizes property connected to a narcotics offense, "it holds an unperfected right to title to it, and ownership will retroactively vest in the government from the time the illegal act was committed upon a judicial quieting of title to the property in favor of the government." Clymore, 245 F.3d at 1200; see Alli-Balogun, 281 F.3d at 371.

[5]At the time that the government seized the currency at issue here, section 881(a)(6) excepted money "furnished or intended to be furnished . . . in exchange for a controlled substance" from the scope of forfeiture "to the extent of the interest of an owner" if the forfeiture was "by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." See 21 U.S.C.A. § 881(a)(6); see United States v. Federal Nat'l Mortgage Ass'n, 946 F.2d 264, 265 (4th Cir. 1991).

retain the property until the claimant files an equitable action or motion and demonstrates that he is lawfully entitled to the return of the property. In response to such an action or motion, the government may still establish its ownership by demonstrating the property at issue is § 881(a) property. See Mantilla v. United States, 302 F.3d 182, 187 (3rd Cir. 2002); Alli-Balogun, 281 F.3d at 371; Clymore, 245 F.3d at 1201; Kadonsky v. United States, 216 F.3d 499, 507 (5th Cir. 2000). The district court made no determination that Babb was lawfully entitled to the return of the currency seized by the government, and Babb points to no evidence in the record that would support such a conclusion. The remaining question, therefore, is whether the government is foreclosed from making its argument at this time.

## III.

Regardless of whether the government ordinarily has means other than forfeiture to establish its right to retain currency seized during a drug transaction, Babb argues that the government is barred from pursuing these means in this case. Specifically, Babb views the district court's order of May 20, 1998, directing that the government return the seized funds to Babb or commence judicial forfeiture, as dispositive of the issue of his right to the currency. Babb argues that we lack jurisdiction to review the government's cross-appeal because the government is, in essence,

13

bringing an untimely appeal of the district court's May 20, 1998, order. Alternatively, Babb argues the government is barred from pursuing its cross-appeal by the doctrines of claim preclusion, issue preclusion, and waiver, or by the mandate rule.

A.

Babb contends that the government's notice of appeal, filed July 22, 2004, was untimely, leaving us without appellate jurisdiction over the cross-appeal. See, e.g., Browder v. Director, Dep't of Corr., 434 U.S. 257, 264 (1978) (explaining that the filing of a timely notice of appeal is "mandatory and jurisdictional"). Babb views the government's cross-appeal as nothing more than a challenge to the May 1998 order which directed the government to return the money or commence a forfeiture action in district court. Thus, Babb claims the government's notice of cross-appeal is far too late to afford us jurisdiction to review the district court's May 1998 order.

The government's notice of appeal specifies the district court's order of judgment entered May 24, 2004, as the subject of its cross-appeal. With respect to that order, the notice of appeal is unquestionably timely. Nothing contained in the notice of appeal or the briefs filed by the government suggests that the government is attempting to appeal the May 1998 order. Therefore, we cannot agree with Babb's contention that the government is

14

appealing the 1998 order.  Moreover, in this circuit, a notice of appeal is not a strict jurisdictional requirement for purposes of a cross-appeal, as Babb suggests.  Rather, we treat the notice of cross-appeal requirement as a non-jurisdictional rule of practice. See LaFaut v. Smith, 834 F.2d 389, 394 n.9 (4th Cir. 1987); Tug Raven v. Trexler, 419 F.2d 536, 548 (4th Cir. 1969).[6]

We conclude that the government's notice of appeal is not defective and in no way deprives us of jurisdiction to review the cross-appeal.  The crux of Babb's objection to the cross-appeal is not the timeliness of the notice of appeal, but rather that the government is trying to raise an issue -- Babb's entitlement to the cash -- that, in Babb's view, was or could have been settled previously.  Hence, Babb offers several preclusion theories as a bar to the government's claims.  These theories, however, are not jurisdictional in nature.  See, e.g., Castro v. United States, 540 U.S. 375, 384 (2003) (explaining that "[t]he law of the case doctrine . . . simply expresses common judicial practice; it does not limit the courts' power" (internal quotation marks omitted));

---

[6]The circuits are divided over this question.  Compare Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1298 (9th Cir. 1999) (treating the cross-appeal requirement as non-jurisdictional); Texport Oil Co. v. M/V Amolyntos, 11 F.3d 361, 366 (2nd Cir. 1993) (same); Spann v. Colonial Village, Inc., 899 F.2d 24, 33 (D.C. Cir. 1990) (same), with Johnson v. Teamsters Local 559, 102 F.3d 21, 29 (1st Cir. 1996) (cross-appeal is jurisdictional); Francis v. Clark Equip. Co., 993 F.2d 545, 552-53 (6th Cir. 1993) (same); Rollins v. Metro. Life Ins. Co., 912 F.2d 911, 917 (7th Cir. 1990) (same).

15

Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (noting that the res judicata doctrine is an affirmative defense subject to waiver); United States v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002) (observing that the "mandate rule" is not jurisdictional).

## B.

We now turn to Babb's alternative position that even if we have jurisdiction to consider the cross-appeal, the government's arguments are barred by either the doctrine of res judicata or the doctrine of waiver and the mandate rule. Res judicata includes the related concepts of claim preclusion and issue preclusion. Issue preclusion "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation." Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks and citation omitted). Claim preclusion bars claims in later litigation arising from the same cause of action as an earlier case in which final judgment on the merits has been entered. It is broader, extending to claims that were not but "might have been presented" in the earlier case. In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). Both doctrines serve to limit relitigation of issues settled in separate, prior litigation.

16

The mandate rule is closely related to the doctrine of the law of the case. See South Atlantic Ltd. P'ship of Tenn. v. Riese, 356 F.3d 576, 583 (4th Cir. 2004) (noting that the mandate rule is "a more powerful version of the law of the case doctrine" (internal quotation marks omitted)). The law of the case doctrine, too, proscribes relitigation of issues that were previously settled; however, the focus is on ensuring that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (emphasis added) (internal quotation marks omitted).

Because we view the district court's May 20, 1998, order as having been entered in an earlier stage of this litigation, not in a prior separate action, we find that the mandate rule and the doctrine of waiver fit better analytically than res judicata. After the district court directed that "the DEA must either return the money to Babb or commence judicial forfeiture proceedings in the district court," J.A. 35-36, the government immediately commenced a separate forfeiture action. When this court subsequently determined that the forfeiture action was barred by the statute of limitations, See United States v. Babb, 54 Fed. Appx. 772, 774 (4th Cir. 2003) (per curiam), Babb returned to district court in January 2004 and filed his motion for return of the property under the original caption and civil action number as

17

his equitable action to invalidate the administrative forfeiture. Babb's motion merely sought to bring to a conclusion his equitable claim for the money.[7]  Babb contends that the government should have challenged the district court's May 20, 1998, order at the time it was entered, and that its failure to do so amounted to a waiver of its ability to challenge the directive that the money be returned to Babb.  Babb contends further that the district court was barred by the mandate rule from reconsidering its directive. The mandate rule provides that "a lower court generally may not consider questions that the mandate has laid to rest."  See South Atlantic Ltd. P'ship, 356 F.3d at 583-84.  The mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived."  United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993).

We cannot agree that the government has waived the issue of Babb's lawful right to possess the currency by failing to raise it in a prior appeal.  A brief review of the procedural history demonstrates that the district court did not decide this issue in its May 20, 1998, order.  In 1997, Babb filed his pro se action challenging the administrative forfeiture proceedings which were completed in December 1993.  The complaint alleged that Babb owned the money, that the DEA seized it, and that the DEA failed to

---

[7]Our opinion in 2003 addressed only the statute of limitations issue and did not pass explicitly or implicitly on any other issue relevant to this appeal.

18

provide him sufficient notice of its intent to forfeit the currency and thereby deprived him of his opportunity to contest forfeiture. Although Babb requested the return of the currency seized by the government, his complaint, construed liberally, sought an order invalidating the administrative forfeiture. The complaint also asserted that William Lunsford, a DEA agent who took custody of the seized currency from state officials, was individually liable for the currency.

Instead of filing an answer, the government moved immediately to dismiss the complaint on the grounds that the district court did not have subject matter jurisdiction over Babb's claims and that Agent Lunsford was protected by qualified immunity. The district court dismissed the claims against Agent Lunsford, but concluded that it had jurisdiction to consider a challenge to the sufficiency of the notice of forfeiture given to Babb.

Babb then filed a motion for summary judgment. On May 20, 1998, the district court entered an order granting summary judgment for Babb on his claim of insufficient notice, concluding that "the administrative forfeiture is void as a matter of law" because "the DEA's attempts at notice did not comport with due process." J.A. 35. In light of this conclusion, the district court declined to address Babb's alternative basis for voiding the administrative forfeiture -- that the DEA lacked in rem jurisdiction over the currency. The district court ultimately concluded that "the DEA

19

must either return the money to Babb or commence judicial forfeiture proceedings in the district court." J.A. 35-36. The government did not appeal this ruling. See <u>Babb v. United States Drug Enforcement Admin.</u>, 172 F.3d 862, 1999 WL 31159 (4th Cir. Jan. 26, 1999) (unpublished) (affirming the dismissal of Babb's claims against Agent Lunsford individually).

The district court's ruling simply permitted Babb to have his day in court to contest the government's right to the money and precluded the government from holding the money indefinitely without affording Babb due process. The effect of the district court's order was to place Babb in the position he would have occupied if he had received sufficient notice of the administrative forfeiture proceedings and had filed a claim--participating as a claimant in a judicial forfeiture proceeding in which the government's ownership interest, not Babb's, was at issue. See <u>United States v. $557,933.89</u>, 287 F.3d 66, 77 (2nd Cir. 2002) ("It must be remembered that what is adjudicated in a judicial civil forfeiture proceeding is the <u>government's</u> right to the property, not the claimant's . . . . [T]he claimant's ownership of the defendant property is not at issue in determining the primary question of the government's right to forfeiture."). Hence, the district court directed the government only to "commence" judicial forfeiture proceedings, not to obtain an order of forfeiture. The court did not discuss, much less reach, an alternate holding <u>in the</u>

event forfeiture proceedings failed. Such a holding would have been superfluous given that forfeiture is not the exclusive method for the government to establish ownership of the currency. We also note that the court entered its order before the government could even file an answer to Babb's complaint. Thus, in our view, the district court reasonably left open the issue of whether Babb was legitimately entitled to the money if the government was unable to establish title through forfeiture proceedings. And, because the issue was left open, the government did not waive it by failing to raise it previously, nor is the government barred by the mandate rule from taking this position in this appeal.

Because there has been no determination as to whether Babb is lawfully entitled to the currency, we remand Babb's claim to the district court. The government asserts that Babb cannot make the requisite showing that he has a lawful right to the money because it is undisputed that Babb and his associates intended the $57,960 in cash to be furnished in exchange for drugs. Thus, Babb can have "no property right" in the money. 21 U.S.C.A. § 881(a)(6). We decline to make findings in the first instance on the incomplete record before us.

IV.

We conclude that the district court prematurely ordered that the currency be returned to Babb without determining whether he was

21

lawfully entitled to it.  Accordingly, we need not address Babb's argument that the district court erred in denying his claim for interest and attorney's fees.

<u>VACATED AND REMANDED</u>
